IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 3:21-cr-105-REP |
| | ) |
| SAUVEUR BLANCHARD, JR., | ) |
| | ) |
| Defendant. | ) |

GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT EVIDENCE TO IMPEACH BY
CONTRADICTION AND ON REBUTTAL PURSUANT TO RULE 404(B)

The United States of America, by its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, and Kaitlin G. Cooke, Assistant United States Attorney, and Glenn S. Leon, Chief of the Fraud Section of the United States Department of Justice, and Christopher A. Wenger, Trial Attorney, respectfully submits this motion *in limine* to admit two categories of evidence at trial. The evidence is admissible to impeach the defendant's anticipated defense by contradiction and is admissible on rebuttal pursuant to Federal Rule of Evidence 404(b).

As described in more detail below, the two categories of evidence the government seeks to admit show that, during the same time period when the defendant committed the charged offenses, he also (1) deposited a counterfeit check into one of his USAA personal checking accounts (last four digits 3071) purportedly drawn on a US Bank account in his name that did not actually exist; and (2) received direct deposits into the same USAA account (last four digits 3071) of unemployment insurance benefits from at least three different states. The government has notified counsel for the defendant that it intends to move *in limine* to admit these categories

1

of evidence for the specific purposes described below.

**FACTUAL BACKGROUND**

On September 8, 2021, a federal grand jury sitting in Richmond, Virginia returned a five-count indictment charging the defendant, SAUVEUR BLANCHARD JR., with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count One), and four counts of substantive concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts Two through Five) (ECF No. 1). Trial is set to begin on April 17, 2023.

As alleged in the indictment, from approximately September 2019 through at least June 2020, the defendant and his co-conspirators agreed to launder criminally obtained proceeds and did in fact launder proceeds derived from a health care fraud and wire fraud scheme that targeted the Iowa Medicaid program ("Iowa Medicaid"). Among the evidence the United States intends to offer at trial, the government will show that a fraudulent electronic funds transfer ("EFT") authorization form was electronically submitted to Iowa Medicaid in June 2020, purportedly on behalf of an actual hospital, that directed and caused Iowa Medicaid to change the bank account into which it paid reimbursements intended for that hospital. The evidence will further show that the fraudulent EFT authorization form submitted to Iowa Medicaid listed a bank account opened by the defendant, on behalf of a sham company established by the defendant, namely Tropi, LLC ("Tropi"), as the hospital's new purported bank account.

As a result of this health care and wire fraud scheme, Iowa Medicaid was deceived into paying more than $260,000 in reimbursements intended for the hospital directly into the Tropi bank account controlled by the defendant. While approximately $203,000 of the Iowa Medicaid payments fraudulently diverted into the Tropi account were later clawed back, nearly $59,000 of

the proceeds were never recovered, because the defendant rapidly moved most of those proceeds out of the account, to another account controlled by the defendant. As alleged in the indictment, the agreement between the defendant and his co-conspirators to launder proceeds they knew were obtained by fraud, and the subsequent transactions conducted by the defendant using the fraudulently diverted Iowa Medicaid proceeds, form the basis for the money laundering conspiracy charged in Count One and the substantive concealment money laundering offenses charged in Counts Two through Four, which occurred within a single week in June 2020.

Count Five charges the defendant with substantive concealment money laundering for knowingly using fraud proceeds to purchase cryptocurrency on or about December 9, 2020. Unlike the prior counts, Count Five does not arise from the conspiracy charged in Count One and does not involve transactions conducted by the defendant using the Iowa Medicaid proceeds, as charged in Counts Two through Four. Rather, the proceeds the defendant used to conduct the transaction charged in Count Five derived from separate wire fraud schemes that targeted numerous individual victims.

As the Court well knows, the defendant intends to offer evidence at his upcoming bench trial that he lacked the ability to form the knowledge and intent required to be criminally responsible for these transactions based on a variety of purported mental health, substance abuse, and personality disorders. In short, the defendant will dispute at trial his motive, intent, and knowledge as it relates to Counts One through Five.

However, simultaneous to these crimes, the defendant received proceeds from other fraudulent conduct not linked to the charged offenses. First, on May 19, 2020, the defendant deposited a counterfeit check into one of his personal USAA checking accounts (last four digits

3

3071). That check was made payable to the defendant in the amount of $10,000, was signed by the defendant, and purported to be drawn on a US Bank account (last four digits 7763) issued in the defendant's name at his home address. That account, however, had been issued to a business located in Sacramento, California, and closed prior to May 19, 2020. Following this deposit, the defendant used his USAA account (last four digits 3071) to conduct retail purchases in the Greater Richmond, Virginia area.

Second, in July and August 2020, the defendant received seven direct deposits into the same USAA account (last four digits 3071) from the state workforce agencies responsible for disbursing unemployment insurance benefits in Ohio, Tennessee, and Arizona. These deposits totaled more than $17,000. Following each of them, the defendant used his USAA account (last four digits 3071) to conduct retail purchases in the Greater Richmond area and to fund transfers, including to other accounts that he controlled. In addition to these deposits, the defendant's USAA account (last four 3071) also received five prenotification deposits from three other state workforce agencies—Massachusetts, New York, and Washington, D.C. At the times of these deposits and prenotifications, the defendant remained continuously employed by the United States Army and resided only in Virginia.

## LEGAL STANDARD

A party's ability to impeach at trial is informed, but not constrained, by the Federal Rules of Evidence. *Cf. United States v. Abel*, 469 U.S. 45, 49-50 (1984) (permitting cross-examination to show bias notwithstanding "the omission of any express treatment of impeachment of bias, prejudice, or corruption" in the Federal Rules of Evidence). Although "[t]he Rules have little to say about th[e] mechanism" of contradicting a witness as a method of impeachment, "it survives

by force of custom" as "probably essential to fairness and balance in presenting and appraising testimony and other evidence." 3 C. Mueller & T. Kirkpatrick, Federal Evidence § 6:85 (4th ed. Supp. 2022) (collecting cases); *see also Behler v. Hanlon*, 199 F.R.D. 533, 557-58 (D. Md. Apr. 20, 2001) (recognizing impeachment by contradiction as "[a]nother traditional method of impeachment not explicitly recognized by the Federal Rules of Evidence"). "At common law, a witness could be impeached by contradiction … meaning that the witness' testimony was shown to be incorrect or false, either through the witness' own concession during examination, or through the introduction of extrinsic contradicting evidence, either testimonial, documentary, demonstrative, or real." *Id.* (citing 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 607.06[1] (2d. ed.1997)).

> [A] witness may be impeached by contradiction in several ways: "close questioning" to elicit concessions of errors in testimony during direct; questioning a witness about the substance or implications of evidence already produced during the case to suggest contradictions; confronting the witness with his or her own contradictory prior statements; and calling another witness or introducing other extrinsic contradicting evidence.

*Id.* (citing Christopher B. Mueller & Laird C. Kirkpatrick, Evidence, § 6.58 (4th ed.1995)). "[I]mpeachment by contradiction may properly attack all kinds of testimony, whether given on direct or on cross, and indeed all evidence offered at trial, as well as inferences suggested by evidence or arguments of counsel interpreting evidence during trial." *Id.*

Federal Rule of Evidence 608(b)'s prohibition against the introduction of "'extrinsic evidence' of prior bad acts by a witness does not apply to impeachment by contradiction," because the rule is limited to "attacks on the character of the witness 'for truthfulness', and *contradicting* a witness is not an attack aimed at showing that she has an untruthful disposition." 3 C. Mueller & T. Kirkpatrick, Federal Evidence § 6:85 (emphasis in original) (recognizing Rule

5

608's "narrow impact on contradiction" to be its limitation on the introduction of extrinsic evidence relating to prior misdeeds that *only bear on the case* by indicating the witness's untruthful disposition" (emphasis in original)).  Rather, "'impeachment by contradiction' is subject only to the constraints of Federal Rules of Evidence 401, 402, and 403." *United States v. McGill*, 815 F.3d 846, 907 (D.C. Cir. 2016) (citing *United States v. Fonseca*, 435 F.3d 369, 374-75 (D.C. Cir. 2006)).  Those rules establish the relevancy and admissibility of evidence having "any tendency to make a fact more or less probable than it would be without the evidence," so long as "the fact is of consequence in determining the action" and its "probative value is [not] substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 401, 402, and 403.  As applied to impeachment by contradiction, the rules usually limit extrinsic evidence "to the material issues in the case." *United States v. Grover*, 85 F.3d 617 (4th Cir. 1996) (table).

Even in the absence of contradictable testimony, Federal Rules of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act … may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404.  Rule 404(b) is a rule of inclusion, acting as a bar on evidence that "tends to prove only criminal disposition." *United States v. Higgs*, 353 F.3d 281, 311 (4th Cir. 2003); *see United States v. Mark*, 943 F.2d 444, 447 (4th Cir. 1991).  Accordingly, pursuant to the standard articulated in *United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997), evidence of prior acts may be admissible if: (1) the evidence is relevant to an issue, such as an element of the offense and is not offered to establish the character of the

defendant; (2) the evidence is necessary, in the sense that it is probative of an essential claim or an element of the offense; (3) the evidence is reliable; and (4) the probative value of the evidence is not substantially outweighed by confusion or unfair prejudice. *See Queen*, 132 F.3d at 997.

Relevant issues for which other crimes may be introduced include, but are not limited to, "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or an absence of mistake or accident." Fed. R. Evid. 404(b). A given crime or bad act is admissible if used for one or more of these non-character issues. *Id.* The fact of a wrong or crime alone, however, cannot justify the use unless the current conduct is sufficiently similar to be relevant to the present charges. *United States v. Gerard*, 926 F.Supp. 1351, 1361-62 (N.D. Ill. 1996).

## DISCUSSION

**I.  The defendant's contemporaneous deposit of a check he knew to be counterfeit and receipt of unemployment insurance benefits from states in which he did not reside are properly admissible to impeach by contradiction the defendant's anticipated defense.**

The defendant has expressed his intent to present evidence at trial that, at the time of the charged offenses, he "was suffering from a significant psychiatric/developmental disorder that affected his capacity to appreciate the nature and quality or wrongfulness of his conduct." Dr. Lynch Psychological Assessment Report (Updated) at 18. Specifically, Dr. Lynch has opined that, when the defendant engaged in the charged conduct, his decisions "were primarily based on his long history of dependent and avoidant behavior which made him susceptible to being manipulated by others." *Id.* According to Dr. Lynch, the stress of learning that his financial transactions were illegal resulted in the defendant's "immediate need to acquiesce to the demands of the investors in order to reduce his stress level" such that he should not be criminally liable for the crimes he committed. *Id.*

7

Extrinsic evidence demonstrating that the defendant received proceeds from other, unrelated fraudulent conduct in the weeks immediately preceding and following those charged in Counts Two through Four is appropriate to impeach by contradiction the evidence that the defendant intends to offer regarding his inability to appreciate the nature, quality, and wrongfulness of the charged conduct.  Such evidence is relevant to the defendant's anticipated defense because his contemporaneous conduct makes his proffered defense less probable than it would be without evidence of that conduct.  Fed. R. Evid. 401(a).  Further, whether the defendant was, in fact, incapable of forming the knowledge and intent required to commit the charged offenses is certainly of consequence to determining his guilt or innocence.  Fed. R. Evid. 401(b).  Finally, the probative value of the evidence is not substantially outweighed by the dangers contemplated by Rule 403.

If the defendant proceeds with his anticipated defense, the United States will offer limited evidence and testimony in its rebuttal case to prove the defendant's deposit of one counterfeit check and his receipt of unemployment insurance benefits from states in which he did not reside.  Regarding these benefits, the United States will not offer evidence that the defendant personally filed the fraudulent claims associated with those payments, just that he knowingly received and used those unlawfully derived proceeds, just as he did in the charged offenses.  This limited evidence will not be unfairly prejudicial if offered in rebuttal to specific claims raised by the defendant concerning his ability to knowingly and intentionally commit a financial crime.  Nor, in the context of a bench trial, will admission of such evidence confuse the issues, mislead the finder of fact, cause undue delay, waste time, or result in the needless presentation of cumulative evidence.  Fed. R. Evid. 403.

8

By contesting his ability to form the knowledge and intent required to commit the charged offenses, the defendant has made his abilities—as they relate to his involvement in, and understanding of, financial transactions—a central issue to the resolution of this case. To the extent the defendant persists in this defense, the United States should be able to offer in rebuttal evidence of the defendant's contemporaneous receipt of proceeds from other, unrelated frauds.

> II. **The defendant's simultaneous deposit of a check he knew to be counterfeit and receipt of unemployment insurance benefits from states in which he did not reside are properly admissible pursuant to Fed. R. Evid. 404(b) to rebut the defendant's anticipated defense.**

This evidence of the defendant's unrelated, contemporaneous receipt of fraud proceeds is also properly admissible in rebuttal pursuant to Rule 404(b) for the purpose of proving the defendant's motive, intent, and knowledge. Again, the fact that the defendant received proceeds from other, unrelated fraudulent conduct in the weeks immediately preceding and following the transactions charged in Counts Two through Four is relevant to the defendant's asserted defense. *Queen*, 132 F.3d at 997. Likewise, the evidence is necessary, in that it is probative of the essential claims raised by that defense. *Id.* The evidence is reliable, because it comprises certified bank records and records from state workforce agencies responsible for administrating unemployment insurance benefits. *Id.* Finally, as explained above, the probative value of the evidence is not substantially outweighed by the dangers contemplated in Rule 403. *Id.* Thus, even if the Court concludes that the evidence of these additional transactions is not necessary to impeach by contradiction testimony of the defendant or any other witness he might call, it is still relevant and admissible pursuant to Rule 404(b) to directly rebut the defendant's claims regarding his motive, intent, and knowledge.

9

## CONCLUSION

For all the foregoing reasons, the government respectfully requests that the Court admit the two categories of evidence described above in its rebuttal case for the purpose of impeaching by contradiction the defendant's evidence and pursuant to Rule 404(b).

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:   /s/  Kaitlin G. Cooke
Kaitlin G. Cooke
Virginia Bar No. 83935
Assistant United States Attorney
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, VA 23219
Telephone: (804) 819-5400
Fax: (804) 771-2316
Email: Kaitlin.Cooke@usdoj.gov

GLENN S. LEON
CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

By:   /s/  Christopher A. Wenger
Christopher A. Wenger
District of Columbia Bar No. 991048
Trial Attorney
Criminal Division, Fraud Section
1400 New York Avenue, NW
Washington, DC 20530
Telephone: (202) 445-9670
Fax: (202) 514-3708
Email: Christopher.Wenger@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 17, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all parties of record.

                                          Respectfully submitted,

                                          JESSICA D. ABER
                                          UNITED STATES ATTORNEY

By:    /s/ Kaitlin G. Cooke
           Kaitlin G. Cooke
           Virginia Bar No. 83935
           Assistant United States Attorney
           United States Attorney's Office
           919 East Main Street, Suite 1900
           Richmond, VA 23219
           Telephone: (804) 819-5400
           Fax: (804) 771-2316
           Email: Kaitlin.Cooke@usdoj.gov